## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ERVIN ANDERSON,                              Case No.  03-74231
         Plaintiff,

v.                                           HON. NANCY G. EDMUNDS
                                             U.S. DISTRICT JUDGE
P. O. DAVID MUHAMMAD Individually
and in his official capacity as a City of    HON. R. STEVEN WHALEN
Detroit Police Officer, and the CITY OF      U.S MAGISTRATE JUDGE
DETROIT, a municipal corporation,
         Defendants.
_____/


## REPORT AND RECOMMENDATION

Plaintiff Ervin Anderson, through his attorney,  filed a civil rights action under 42 U.S.C. §§ 1983 and 1988, naming the City of Detroit  and former City of Detroit police officer David Muhammad as Defendants.  Before the Court is Defendant City of Detroit's Motion for Summary Judgment under Fed.R.Civ.P.56.  The matter has been referred for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that the City of Detroit's Motion for Summary Judgment  be GRANTED.

## I.  BACKGROUND FACTS

On the evening of October, 26, 2001, Defendant, former Detroit police officer David

Muhammad, proceeded to the home of Plaintiff's father after being erroneously informed by an acquaintance that Plaintiff had stolen the radiator from his car earlier in the evening. *Response to Motion to Dismiss* at 6.  Muhammad, accompanied by six other men, accosted Plaintiff as he emerged from his car in front of his father's house at 7951 Hathon. *Id*. at 7.

Plaintiff alleges that while still seated in his car, Muhammad walked over to Plaintiff's car, knocked on the window, then asked him to exit his car, stating, "[y]ou know how I do," which Plaintiff interpreted to mean 'you know that I am a police officer.' *Id.* at 7, footnote 7.  After Plaintiff emerged from his car, Muhammad accused Plaintiff of stealing his radiator.  *Id.* at 7-8.  At the same time Plaintiff denied that he stole Muhammad's radiator, the group of men accompanying Muhammad encircled Plaintiff.  *Id*. at 8.  Muhammad then ordered Plaintiff to put his hands on the trunk of one the cars, with feet apart, while he searched him. *Id.*  Plaintiff alleges that it was at that time he noticed that Muhammad carried a firearm issued to Detroit police officers. *Id.* Plaintiff alleges that during the search, Muhammad placed the gun against the right side of his torso.  *Id.* at 9.

As Plaintiff continued to insist that he had not stolen Muhammad's radiator, one of the men surrounding him (Mustafa) struck him in the head with his fist.  *Id*.  Plaintiff claims that the same individual reached into his pocket, then pulling out his keys along with approximately sixty dollars, after which Muhammad also struck Plaintiff.  *Id.*  Plaintiff alleges that Mustafa then entered his vehicle and proceeded to remove his  sound system. *Id.*  Muhammad then allegedly expressed his intention to beat Plaintiff.  *Id* at 10.  Plaintiff alleges that he managed to break loose when Muhammad became temporarily distracted.  *Id.*

Muhammad then fired several shots in Plaintiff's direction as he fled to a nearby alley. *Id.*

Plaintiff reached the front porch of his father's house, where his father managed to push him inside. *Id*. Plaintiff's father, who had witnessed the events of the previous few minutes, then emerged from the house, walking toward Muhammad with his hands in the air to show that he was unarmed. *Id.* at 10-11. Muhammad, who now sat in the passenger seat of Plaintiff's car pointed his gun directly at Plaintiff's father for several seconds. *Id.* at 11. Muhammad then ordered the man in the driver's seat to start the car and leave. *Id.* Plaintiff's father then called the police, stating that his son had been robbed at gunpoint and assaulted by a Detroit police officer. *Id.* Investigators, including personnel from the police department's internal affairs division took written and verbal statements from Plaintiff, his father, and other witnesses. *Id.* Investigators confirmed that the recovered fired shells belonged to a police officer's .40 Glock firearm. *Id.*

The Detroit Police Department discharged Muhammad, who was subsequently convicted of felony charges. *Motion for Summary Judgment* at 3. At the time this motion was filed, Muhammad remained incarcerated at the Deerfield Correctional Facility. *Id.*

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact.

*Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at

-4-

322-23.

## III.  ANALYSIS

Plaintiff alleges that the City of Detroit is culpable for Defendant Muhammad's misdeeds because it "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Detroit . . ." *Second Amended Complaint* at ¶ 75.  Plaintiff further alleges that "[i]t was the policy and/or custom of the City . . . to inadequately and improperly investigate citizen complaints of police misconduct . . .and that no adequate and/or efficient checks and balance system was employed at the time of the incident that would effectively [have] precluded" Muhammad from committing crimes against Plaintiff. *Id.*  Plaintiff states further that his injuries were the result of the City's failure to adequately supervise and train its police officers. *Id*. at ¶76.

In *Monell v. Department of Social Services of City of New York* 436 U.S. 658, 98 S.Ct. 2018,  (1978), the Supreme Court held that under § 1983, municipal liability is not unlimited, and that a municipality could not be liable on a theory of *respondeat superior*: "A municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 436 U.S. at 691, 2036. (Emphasis in original).  However, the *Monell* Court found that when the acts of individual employees represent the government's custom or policy, the municipality can be held liable. *Id* at 638, 2037-2038.

In  *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained, "The requirement of an official policy distinguishes the acts of the employee from

those of the municipality, ensuring that the municipality is held responsible only for the latter."

Nevertheless, a municipal policy need not be formal or written to bring § 1983 into play. It can be found in "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)(citations omitted). In addition, § 1983 liability can be based on a policy of inadequate training or supervision, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

In *Memphis, Tennessee Area Local, American Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902-903, (6th Cir. 2004) the court found that "a municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Id.*; *Fletcher v. O'Donnell*, 867 F.2d 791,792-794 (3rd Cir. 1989). If it is shown that the city "knew or reasonably should have known" that the actions of its police officers were unlawful, this would support a claim that the city was "deliberately indifferent" to the rights of Plaintiffs, which in turn "can be properly thought of as a city policy or custom that is actionable under § 1983." *Memphis* at 904.

Obviously, Plaintiff does not claim that the City of Detroit follows a written policy which encourages or condones the practice of officers committing armed robberies while off-duty. Rather, pursuant to *Memphis*, Plaintiff's allegations can be construed to allege an

-6-

unwritten, municipal "custom,"  known and by implication also acquiesced in by City officials.   However, Plaintiff fails to present any evidence that the City of Detroit adhered to a such a custom of permitting or acquiescing to carjackings and armed assaults by its officers.

First, although Plaintiff argues that progress reports created during  Muhammad's probationary period establish that he needed, but did not receive further training, Muhammad's assessments actually indicate that he was an average to above average trainee. *Response to Motion to Dismiss* at 3, *Id*. at Exhibit 2a.[1]  The lowest mark of his probationary period, received on in April, 1998, was a score of "3" on a five point scale of 1-2: unacceptable; 3: marginal; 4: acceptable; and 5: very good.   *Id.*   His training officer commented that he had given Muhammad the "3" in the "officer safety" category because he "[did] not perceive potentially dangerous situation [and] fails to cover other officer." *Id.* However, in same reports, he received scores of  "4"s and "5"s in the remaining twelve other categories, including a "5" for his ability to interact with the public.  Nothing contained in the submitted records relating to Muhammad's probationary period would lead his superiors to  reasonably  conclude  that  he  would  later  commit  armed  robbery.   Plaintiff cannot demonstrate that the crimes committed against him by Muhammad were the result of defects in his training.

Second, although Plaintiff alleges that the City "does not carefully track officers who

---

[1]Within Exhibit 2a, some of the pages have been stamped with unrelated and unordered exhibit numbers.

fire their weapons and that in conducting investigations of fatal shootings by police," and that "investigators often accept the word of officers over civilians," this allegation, if true, does not in and of itself create City liability for Muhammad's acts. Citing Detroit Free Press investigations into police misconduct, Plaintiff refers to incidents in which officers, acting under color of the state law, employ inappropriate or excessive force in performing otherwise lawful duties. In the same vein, Plaintiff cites several inapplicable cases which discuss whether an officer acted "under color of law" while off-duty. While such cases may be relevant to Plaintiff's §1983 action against Muhammad, they do not establish that the City bears responsibility for his actions. Although off-duty officers performing "state actions," such as arrests, are subject to "color of law" §1983 liability, their misdeeds do not automatically implicate their employer. More fundamentally, it does not follow that the municipality is responsible for the isolated *criminal acts* of its employees, committed off-duty, in circumstances unrelated to their work. Although the facts indicate that Plaintiff emerged from his car and submitted to a search by Muhammad, based upon what he believed were the lawful orders of a police officer, Muhammad's criminal exploitation of his position - while deplorable - does not suggest that his acts were the result of police department supervision, training, or represented a municipal custom. *See Riddle v. Cornett,* 2002 WL 1880750, 3 (E.D. Mich. 2002) ( evidence technician working for the township who gained Plaintiff's trust by telling her that he would use his position to get charges against her dismissed before assaulting her did not establish a township policy or custom).

Likewise, Muhammad's unlawful acts cannot be attributed to the City's policy of

-8-

permitting officers to carry department-issued firearms while off-duty.  Plaintiff  cites an independent study, issued in April, 2004 which states that the Detroit Police Department (DPD)was then in non-compliance with a "Department of Justice Consent Decree Use of Force," which pertained to protocol for off-duty police officers involved in police actions, including a prohibition from carrying or using firearms in situations "where the officer's performance may be impaired" or compromised by other factors.  *Response to Motion to Dismiss* at Exhibit 3.  Plaintiff asserts that the DPD policy of  carrying firearms  while off-duty in most circumstances was the "but for" cause of the constitutional violations commit against him.

However, the independent report cited above alludes to potential violations committed by off-duty officers *while performing otherwise lawful acts*.  Further, the report does not criticize the department's written policy of allowing its officers to carry guns off-duty. *Id.* at Exhibit 8.  Even assuming, *arguendo*, that non-compliance with the Justice Department guidelines or the DPD manual instructing officers in the appropriate use of firearms while off-duty amounted to a "policy," Plaintiff has not provided any evidence to support his allegation that "but for" his DPD firearm, Muhammad would not have held him a at gunpoint with another weapon or taken his car.  *See Doe v. Claiborne County, Tenn. by and through Claiborne County Bd. of Educ*. 103 F.3d 495, 509 (6th 1996) (Even if isolated incidents amounted to a 'policy,' a direct causal connection could not be established between the policy and the constitutional violation.)  While Plaintiff endured a frightful experience at the hands of a member of the DPD, he has failed to present evidence that would suggest that the

2:03-cv-74231-NGE   Doc # 69   Filed 08/03/05   Pg 10 of 11   Pg ID 447


incident occurred as a result of DPD policy.  Under these facts, no rational trier of fact could find for the Plaintiff and against the City of Detroit.  Therefore, Defendant City of Detroit is entitled to summary judgment.

## IV.   CONCLUSION

I therefore recommend that Defendant City of Detroit's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 3, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 3, 2005.

s/Gina Wilson
Judicial Assistant